KATE W. DAVIS, ADMINISTRATRIX, APPELLANT, V. CHICAGO,
    BURLINGTON & QUINCY RAILWAY COMPANY ET AL.,
    APPELLEES.

FILED FEBRUARY 20, 1909.   No. 15,403.

Negligence: DIRECTING VERDICT. The question of negligence and con-
    tributory negligence is usually a question to be submitted to a
    jury, but where the facts are undisputed, and such that reason-
    able minds can draw but one conclusion therefrom, it is the duty
    of the court to direct a verdict.

APPEAL from the district court for Saunders county:
BENJAMIN F. GOOD, JUDGE. *Affirmed.*

*C. S. Polk* and *O. B. Polk,* for appellant.

*James E. Kelby, Halleck F. Rose, Frank E. Bishop* and
*Fred M. Deweese, contra.*

CALKINS, C.

This was an action against the defendant railway com-
pany and one of its locomotive engineers for negligently
causing the death of Stephen A. Davis, plaintiff's intes-
tate. At the close of plaintiff's testimony the trial judge
directed a verdict for defendants, and from a judgment
rendered upon this verdict the plaintiff appeals.

Mr. Davis was in the employ of the owners of a stone
quarry which was reached by a spur track about three
miles long, leaving the main line of the defendant rail-
road at Cedar Creek, a station about six miles west of
Plattsmouth. He resided in Plattsmouth. Under his
employment it was part of his duty to go to the
quarry in the morning to bill out loaded cars and
have empty cars set for loading. For many months
he had been accustomed to leave Plattsmouth on an
early morning freight train which carried passengers
in its way car. When this train arrived at Cedar Creek
it was usually run out on the station siding. There was

a siding to the spur track, upon which cars for the quarry were stored, and it was customary for the train crew with the engine to make up a train for the quarry, Mr. Davis directing what cars he wished taken to the quarry, and the order in which he desired to have them placed. When this train was made up, he usually rode to the quarry on a flat car, the way car being left at Cedar Creek, and sometimes in the cab of the engine, returning in the same manner. On the morning of the accident, two flat cars for the quarry had been run upon the spur track, upon one of which the train conductor and Mr. Davis were standing. The conductor then left the car and went about making up the train for the quarry in compliance with the directions which he had received from Mr. Davis. Mr. Davis remained standing upon a flat car, with twelve-inch boards at the end presumably to keep the stone from slipping off between the cars. The engine was then attached to a coal car having side and end boards about three feet high, and this car was propelled toward the car upon which Mr. Davis was standing, being cut loose from the engine after gaining headway, and left to reach the other cars by its own momentum. This method of shunting cars was described by the witnesses as "kicking in." The head brakeman was riding on the coal car kicked in, and, discovering that the car had not sufficient momentum to reach and couple onto the cars standing upon the track, he jumped off the car and pushed, but was unable to bring it nearer than within one or two feet of the cars standing upon the track. That Mr. Davis was conversant with what the ·train men were doing appears from the fact that he jokingly remarked to the brakeman that he was not a very good locomotive. After this the train crew coupled to a string of seven flat cars, and kicked them in upon the spur track with the object of coupling them to the coal car before kicked in, and causing that car to couple to the two cars, upon one of which Mr. Davis was standing. The same brakeman was in charge of the string, and, after partially setting the brake upon the car which

was in front of the seven and nearest Davis, he went back to the brake on the next car, but he is uncertain as to which end of that car the brake was on. He was the only eye witness of the accident. He testified that, when the. cars approached to within about a car length of the coal car, he saw Mr. Davis, who was standing near the end of the car next to the approaching string. The witness states that he was within two or three feet of the end of the car, but admits that the coal car with the end boards three feet high was between him and Mr. Davis. He testifies that Mr. Davis' attention was fixed upon a memorandum book which he held in his hand, that he called to him to "Look out!" and that Davis looked up and toward him, and then looked down again; that, when the cars struck, Mr. Davis fell off the end of the car, and was run over by the trucks of the coal car and the front trucks of the next car, receiving injuries from which he died in about 20 or 30 minutes. The cars were equipped with automatic couplers, and the evidence discloses that they needed to be brought together with some force in order that the couplings should connect. The testimony of the witness Wagner is that the string of cars was moving at from four to six miles an hour, and that they came together with more force than was used sometimes and less than at others. It also appears from the evidence of this witness that he made no effort to set the brake after he gave the warning to Mr. Davis, and that a prompt setting of the brake at that time would have reduced the momentum of the moving cars and the violence of their impact.

It is contended by the plaintiff that, conceding that the deceased carelessly placed himself in a dangerous position, the evidence justified the submission to the jury of the question whether the brakeman Wagner did not discover his peril in time to avoid the injury by the use of reasonable care on his part. If Mr. Davis had been standing on the track in a place of positive danger, and his conduct had been such as to indicate to the brakeman in charge of the approaching cars that he was oblivious to his

jeopardy, it would have been the duty of the brakeman to use every effort to check the speed of the cars in order to avoid the injury if possible. But in this case Mr. Davis was not in a position of positive danger. He was, as the brakeman knew, accustomed to be upon such cars, and acquainted with the effect of the impact resulting from switching cars. The brakeman had a right to assume that he had gained some skill in the practice of preserving his equilibrium under such circumstances. A person so experienced would naturally meet the danger of such a shock, not by jumping from the car, but by bracing himself so as to resist the tendency to fall. There was nothing therefore in his conduct to indicate to the brakeman that he was unprepared. True it is that the brakeman testified that Mr. Davis was standing within two or three feet of the end of the car, but the admitted facts show that it would have been impossible, on account of his position and the intervening coal car, for the brakeman to see with any degree of accuracy how near the end of the car Mr. Davis stood. It is fair to say that the accident resulted from the deceased's being unprepared to meet the shock, or from his standing so near the end of the car, or both, and we are satisfied that the evidence is insufficient to justify a finding by a jury that the existence of these conditions was apparent to or should have been discovered by the brakeman. Had the question been submitted to the jury upon this evidence and a verdict found for the plaintiff, it would have been the duty of the court to set it aside. In such cases the court should direct a verdict in justice to the parties and the jury, which is put in a false position where it is directed to deliberate upon evidence from which it can reach but one possible conclusion.

We therefore recommend that the judgment of the district court be affirmed.

DUFFIE and EPPERSON, CC., concur.

GOOD, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

ROOT, J., not sitting.